Anthony L. Marchetti, Jr., Esq. (AM4302)
MARCHETTI LAW, P.C.
900 N. Kings Hwy., Suite 306
Cherry Hill, NJ 08034
(856) 824-1001 fax: (856) 414-1806
amarchetti@marchettilawfirm.com

Ravi Sattiraju, Esq.
SATTIRAJU & THARNEY, LLP
50 Millstone Road
Building 300, Suite 202
East Windsor, NJ 08520
(609) 469-2110
rsattiraju@s-tlawfirm.com

Harold l. Lichten, Esq.
Matthew W. Thomson, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St #2000
Boston, MA 02114
(617) 994-5800 fax: (617) 994-5801
hlichten@llrlaw.com
mthomson@llrlaw.com
Attorneys for Plaintiffs
(Pro hac vice to be submitted)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE ORTIZ individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> Goya Foods, Inc. and A.N.E. Services, Inc. <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br> Class Action <br><br> COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL |

Plaintiff, Jose Ortiz, by way of Class Action Complaint against the Defendants, states as follows

1

1. Plaintiff, Jose Ortiz, individually and on behalf of all others similarly situated, by way of Complaint against Defendants, alleges as follows:

## INTRODUCTION

2. This is a class action suit asserting claims for violation of the New Jersey Wage Payment Law, Wage and Hour Law and other claims relating to Defendants' misclassification of Defendants' sales representatives as "independent contractors" as opposed to employees.

3. This is an action for relief from Defendants' misclassification of their sales representatives as independent contractors.

4. Goya Foods, Inc. is in the food distribution business, relying upon Plaintiff and similarly situated sales representatives for the sale and distribution of its products nationwide.

5. The form agreement that Goya imposes upon the sales representatives as a condition of employment specifically provides that the parties' relationship is governed by New Jersey law.

6. Goya Foods, Inc. retains and exercises pervasive control over the sales representatives, including by exercising such control over Plaintiff and members of the proposed national class, such that the sale representatives are in fact Goya's employees under New Jersey law.

7. As employees, the sales representatives are entitled to the protection of New Jersey's wage protection laws as well as the anti-retaliation provisions set forth therein.

8. Goya uses a wholly owned subsidiary, Defendant A.N.E. Services, Inc. as an intermediary between Goya and its sales representatives. A.N.E. Services is not a New Jersey registered business and is a sham entity operated from Goya's Jersey City offices for the sole purpose of contracting with Goya's sales representatives. In reality, Plaintiff is a Goya employee as is every member of the proposed Class.

9. Goya and its subsidiary, A.N.E., misclassify Plaintiff and members of the proposed class to reduce costs, shift the costs of operating Goya's sales force to the individuals who perform the work and to avoid worker and wage protection laws, including obligations as basic as workers compensation and the right to be free from illegal wage deductions.

10. Plaintiff, like the other over 300 individuals who hold the same position throughout the country, work on a full-time basis servicing Goya's customers in a geographical area set by Goya using Goya-mandated equipment, marketing materials, methods and forms. Sales representatives are an integral part of Goya's business, in that they are the primary mechanism for selling Goya's food products.

11. Plaintiff, like all members of the proposed class have a relationship that is governed by Defendants' Broker Agreement that is nonnegotiable, offered and modified on a take-it-or-leave-it basis, and is governed in all aspects by New Jersey law.

12. Plaintiff, like all members of the proposed class is not free from the control of the Defendants, performs work at times from Defendants' place of business and does not have an independent business that would survive separation from Defendants.

13. Defendants have illegally shifted to Plaintiff and members of the proposed class the burden of purchasing and maintaining certain tools, equipment and supplies necessary to operate Defendants' business, makes deductions from their pay, and forces Plaintiff and the proposed class to pay for their own workers' compensation and other insurance.

14. By this suit, the Plaintiffs seek compensatory and equitable relief/restitution as a result of Defendants' illegal acts.

## THE PARTIES AND THEIR RELATIONSHIP

15. Plaintiff is a citizen of the Commonwealth of Pennsylvania and has been a full-time sales representative for Goya at its Jersey City, New Jersey location since the mid-1980s. Mr. Ortiz resides at 845 Madison Street, Mohnton, Pennsylvania 19540.

16. Defendant, Goya Foods, is a Delaware corporation with its principal office in Jersey City, Hudson County, NJ.

17. Defendant, A.N.E. Services, Inc. is a Delaware corporation, LLC, business entity or unincorporated association that is unregistered in the State of New Jersey despite having its principal office in Goya's Jersey City, New Jersey headquarters. This Defendant is a wholly controlled subsidiary of Goya and exists for the sole purpose of providing another corporate intermediary in an effort by Goya to attempt to avoid the requirements of New Jersey's wage and worker protection laws.

18. There exists, and at all times mentioned herein existed, a unity of interest between Goya and A.N.E. such that any individuality or separateness between them is fictional and A.N.E is the agent/alter ego of Goya.

19. Mr. Ortiz originally worked under a contract with Goya as a sales representative signed in his individual name. Later Goya formed A.N.E. and required Plaintiff to sign with A.N.E. as a condition of continuing to perform the same work. A.N.E. has issued three unilateral revisions to Plaintiff's Agreement and each time required Plaintiff to sign as a condition of continued employment.

20. In or about August 2014, Defendants required Mr. Ortiz to form a business entity through which he had to work and be paid as a condition of further employment. Other than this formation, nothing about Mr. Ortiz's work changed.

21. From that point, he performed this work through a corporate entity he formed at Defendants' request known as Grateful Souls, L.L.C., for which Plaintiff has been forced to pay annual fees to maintain corporate status.

22. Grateful Souls has no ongoing business and would cease to exist as an ongoing entity following Mr. Ortiz's separation from Goya. Indeed, the Broker Agreement specifically precludes Plaintiff or Grateful Souls from engaging in sales of other products.

23. Plaintiff personally worked for Goya on a full-time basis during his relationship and was personally subject to the wage deductions and other losses as set forth herein.

24. At all times relevant to this action, Defendants have actively and continuously conducted business inside and outside of the State of New Jersey, employing so-called contractors such as Plaintiffs and the members of the proposed Class.

## FACTS COMMON TO ALL CLAIMS

25.     Defendant Goya, directly and through its subsidiary/alter ego A.N.E., is a national company employing individual sales representatives to sell Goya food products to retailers and other Goya customers throughout the United States.

26.     During the time relevant to this action, Goya/A.N.E. retained what is believed to be more than 300 Sales Representatives for the purpose of selling its products and wares to various businesses and facilities in the Northeastern United States.

27.     Plaintiff, like all members of the proposed class, has signed various versions of a contract with Defendants that is called a "Broker Agreement" and which contains various non-negotiable terms imposed upon Plaintiff by the Defendants. That Agreement makes clear that the Agreement and all matters relating to performance of the Agreement are governed in all aspects by New Jersey law.

28.     Defendants compensate Plaintiff and members of the Proposed Class based upon a commission structure.

29.     Earned commissions are Plaintiff's wages and this is the same for each member of the proposed class under New Jersey law – they are direct compensation earned and paid on account of the sales representative's work.

30.     Defendants make deductions from the wages of Plaintiff and the proposed class that are illegal under New Jersey law. These include deductions for Worker's Compensation insurance, bad/uncollected invoices and a reserve account.

31.     This reserve account is set at a percentage of commissions earned that is deducted from the sales representatives' pay.

32. Where Goya's customer fails to pay a Goya invoice, Goya/A.N.E deduct 40% of the unpaid invoice from the sales representative's wages.

33. Goya/A.N.E retained and exercised the power to require that sales representatives work through LLCs or corporations, or else Goya/A.N.E would no longer permit them to work.

34. The Agreement characterizes each sales representative as an "independent contractor."

35. The existence of an intervening single-purpose LLC or corporation does not control the employment relationship under New Jersey law. Under the ABC test, the relative nature of the work test, and any other employment test, the individual sales representatives here are, in law and in fact, employees of Goya/A.N.E.

Plaintiff and The Putative Class Are Employees Under New Jersey Law

36. Defendants retain the exclusive right to control the way Plaintiff and similarly situated sales representatives perform their jobs.

37. The sales representatives are assigned routes to be followed each day. Sales representatives are required to attend periodic meetings in at Corporate Office in Jersey City and Pedricktown, New Jersey for which they are not paid.

38. Sales representatives are required to wear certain clothing to maintain a "professional" appearance satisfactory to Goya.

39. Sales representatives are required to work shifts that are pre-determined by Defendants and are required to work on holidays.

40. Sales representatives were provided two weeks off vacation, paid by Defendants.

41. Defendants unilaterally altered sales representative routes.

42. Defendants unilaterally set the compensation to be paid to the sales representatives.

43. The Agreement is and at all times mentioned herein has been a contract of adhesion, drafted by Goya and its legal counsel, printed by Goya and distributed by Goya among sales representatives for mandatory signature. Plaintiff had no opportunity to negotiate over the terms or conditions contained in the Agreement.

44. Despite the Agreement and despite repeated representations by Defendants, Plaintiffs are, under New Jersey law, employees of Goya/A.N.E. for the reasons set forth herein.

45. Goya/A.N.E. exercise extensive control over the means by which Sales representatives perform the work necessary for the job.

46. Such control is exerted in part through the Broker Agreements and provisions described above, which Plaintiff was required to sign as a condition of employment.

47. Goya/A.N.E.'s complete control over Plaintiff and other sales representatives is also exercised by other rules and regulations, written and unwritten.

48. Goya selects which geographical area Plaintiff works each day.

49. Goya requires Brokers to provide a proposed route report that details which businesses will be serviced on a daily and weekly basis. Goya then, after approval, uses that report to ensure that Brokers follow that schedule each day. Goya requires Plaintiff to submit a Weis Markets Recap Report, which is a weekly report detailing which Weis markets were visited each day and the name of managers seen each day,

which Goya management uses visit stores to confirm whether the sales representative is properly servicing Goya's customers. .

50. Goya requires sales representatives to attend periodic meetings in New Jersey for which they are not paid.

51. Sales representatives are required to wear certain "professional" apparel as instructed by Goya.

52. Sales representatives are required to work shifts that, while sometimes flexible, are pre-determined by Defendants and sales representatives are required to work on some weekends and some holidays.

53. Sales representatives are provided two weeks off for vacation. Goya/A.N.E. pays for the services of a replacement Trainee to fill in as a temporary sales representative for those two weeks. If a third week vacation is requested, Goya/A.N.E. charges brokers $625 for the week as a wage deduction or $125 per day of absence from work.

54. Defendants unilaterally altered sales representative routes and retained the right to do so.

55. Defendants require Plaintiff, directly or indirectly, to pay for the purchase or lease of a vehicle, as well as for its maintenance and upkeep. Other work-related costs required to be paid by Plaintiff include fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration fees, tolls, computer, internet access, printer/scanner, office materials, cell phones, cell phone data plans, and incorporate fees.

56. Plaintiff is specifically not permitted to work for others while working for Goya.

57. Plaintiff and other sales representatives have no control over the prices Goya charges to Goya's customers for Goya's products.

58. Plaintiff and other sales representatives do not have authority to reject sales or customers.

59. Plaintiff and other sales representatives are required to adhere to Goya's policies, rules and procedures and management requirements or they are subject to discipline up to and including termination.

60. Goya retains the power to terminate sales representatives, and/or their "business entities" and/or to approve or disapprove helpers.

61. Goya retains an exquisite level of control as to the methods and manner in which the work is performed and actively monitor's the sales representatives' compliance with these rules.

62. Goya also requires sales representatives to use certain electronic equipment to transmit all product orders, which include GPS technology to track the sales representative's work.

63. Plaintiff's work is an active, integral and indispensable part of Goya's business enterprise. Plaintiff and other representatives have rendered, and continue to render, valuable personal services to Defendant Goya. The personal services described immediately above:

    a. confer substantial benefits on Goya;

    b. are an integral part of the process which enables Goya to offer its customers products and services;

    c. Do not involve the kind of expertise which requires entrustment to an independent professional, as opposed to an employee.

64. Plaintiff and the members of the proposed class are not free from Goya control over the method and manner of how the work is performed.

65. Plaintiff's work is not outside the ordinary course of Goya's business, and the work is performed at least on some locations, Goya's place of business.

66. Plaintiff has no bona fide ongoing business entity that could or did survive the termination from Goya.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this class action on behalf of himself and other similarly situated "contractors."

68. Specifically, Plaintiff brings this action as a class action on behalf of all persons who worked, on a full time basis, for Defendants from October 10, 2010 to the time of trial (the "Class Period") as sales representatives and signed a Broker Agreement, directly or on through a business entity.

69. Upon information and belief, the number of members of the Plaintiff Class exceeds 300 during the Class Period.

70. The Plaintiff Class is so numerous that their individual joinder into a single action is impracticable. Although the exact number of Class Members cannot be properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Defendants' records.

71. Each member of the Plaintiff Class signed materially identical Broker Agreements that provide that the contract shall be construed and governed by New Jersey Law regarding interpretation and performance.

72. By classifying its sales representatives as Independent Contractors, Defendants enjoy a significant savings over Goya's competitors, in that the pay is less, there are no benefits, and the representatives incur many of the business' costs, among other things.

73. In its Broker Agreements, Defendants conceal the true nature of the relationship between Goya and its sales representatives: that of employer and employee.

74. Goya does not pay for workers' compensation coverage or unemployment insurance, illegally shifting those costs to the "contractor."

75. Defendants retain for themselves a right to control the brokers' work and actually utilizes that right. As described above, Goya/A.N.E. systemically controls virtually all aspects of the relationship with Plaintiff and members of the Class through the provisions of the Broker Agreement, centralized rules and requirements that are actively monitored and enforced by Defendants' Division and Territory Managers/Supervisors.

76. Under the ABC test applicable to the Wage Payment Law, the relative nature of the work test applicable to Workers Compensation and all other tests utilized in New Jersey, every Goya sales representative is, as a matter of law, a Goya employee.

77. The Defendants' actions have inflicted the same types of harm upon every member of the Class.

78. There are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

79. Common legal and factual issues predominate over any questions affecting only individual members of the Class. Among the common questions of law and fact are the following:

   a. Whether the contracted workers are Goya/A.N.E. employees;

   b. Whether Goya/A.N.E. unlawfully forced Plaintiff to pay for business expenses that rightfully should have been paid for by their employer, Goya/A.N.E.;

   c. Whether Goya/A.N.E., by making unlawful deductions from the pay of sales representatives and/or their "business entities," violated the Wage Payment Law;

   d. Whether the agreement permitting Goya/A.N.E. to shift the burden of employment expenses, taxes, workers' compensation and other insurances is illegal and therefore void; and,

   e. Whether Defendants' actions violate the implied covenant of good faith and fair dealing.

80. The claims of the named representative Plaintiff are typical of the claims of other members of the Plaintiff Class. The named Plaintiff shares the same interests as other members of the Class in this action because, like other Class Members, they have each suffered financial loss of thousands of dollars due to Goya/A.N.E.'s conduct.

81. The Class Representative has an incentive and are committed to vigorously prosecuting this action because he has suffered losses as a result of Defendants' actions.

82. Plaintiff has retained qualified counsel, experienced in class action practice, to represent them in this matter.

83. A class action is the only realistic method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

84. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and/or may substantially impede Class Members' ability to protect their interests, and therefore would be contrary to the interest of justice and equity.

## COUNT I – VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW

85. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

86. Goya/A.N.E. is an employer within the meaning of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1(a).

87. Plaintiff and each Class Member is an employee within the meaning of N.J.S.A. 34:11-4.1(b).

88. Goya/A.N.E. has paid to the Plaintiff compensation for his services that are wages within the meaning of N.J.S.A. 34:11-4.1(c).

89. Because of the closed nature of the so-called business entities, which Goya/A.N.E. requires, a deduction from the entities is really a deduction of the Plaintiff's wages.

90. Goya/A.N.E. has withheld and/or diverted from the Plaintiff's wages amounts for workers' compensation, employment taxes, and business expenses such as vehicle insurance and other expenses in violation of N.J.S.A. 34:11-4.4 et. seq.

91. Goya/A.N.E.'s actions in mandating the payment of expenses acts as a direct or indirect deduction from wages.

92. The Broker Agreement as described herein violates the Wage Payment Law, and is unlawful, null and void pursuant to N.J.S.A. 34:11-4.7.

93. Plaintiff has a private right of action against in violation of N.J.S.A. 34:11-4.4 et. seq., his employer, for the full amount of wrongfully withheld or diverted wages, plus statutory penalties, fees and other remedies.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendants for wrongfully withheld and diverted wages, compensatory damages, statutory penalties, declaratory judgment holding the Broker Agreement to be null and void, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

## COUNT II – UNJUST ENRICHMENT

94. Plaintiff incorporates by reference the above paragraphs of this Complaint as if fully set forth herein.

95. Despite the express terms of the Broker Agreement, Plaintiff's relationship with Goya/A.N.E. satisfies every aspect of each New Jersey test for employment, and not for independent contractor status.

96. The Broker Agreement illegally and unfairly advantages Goya/A.N.E., by mischaracterizing the status of the Plaintiff in that Goya/A.N.E. evade employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, make illegal wage deductions, illegally shifting the expense of workers' compensation coverage and other expenses to Plaintiff.

97. The Broker Agreement between Goya/A.N.E. and Plaintiff and each member of the Class is void as being illegal and/or against public policy and therefore unenforceable.

98. The Broker Agreement is specifically void under the provisions of the Wage Payment Law. N.J.S.A. 34:11-4.7.

99. The Broker Agreement between Goya/A.N.E. and Plaintiff is an unconscionable contract of adhesion, which is unenforceable as contrary to public interest, policy and law.

100. By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay Goya/A.N.E. own expenses, Goya/A.N.E. have been unjustly enriched.

101. As a direct and proximate result of Defendants' conduct, Defendants have received substantial benefits to which they had no entitlement, at Plaintiff's and the Class Members' expense, including lost profits, self-employment taxes, premiums for workers' compensation insurance, business expenses, compensation of replacement workers, and other expenses.

102. Plaintiff and members of the Class are entitled to restitution for all of the business expenses they were illegally required by Goya/A.N.E. to bear, for all of the employment taxes, unemployment compensation, workers compensation and other costs/benefits that Goya/A.N.E. should have but did not pay, and Plaintiff and Class members are entitled to the quantum meruit value of their services as employees.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in their favor and against the Defendants rescinding the Broker Agreement's provision designating Plaintiff an independent contractor, and awarding restitution compensating for the reasonable value of the benefit provided to Goya/A.N.E., disgorging the profits improperly obtained by Goya/A.N.E., along with compensatory damages, consequential damages, declaratory judgment and injunctive relief, costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

**COUNT III – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

103. Plaintiff incorporates by reference the preceding Paragraphs of this Complaint as if fully set forth herein.

104. Under New Jersey law, each Broker Agreement contains a covenant of good faith and fair dealing that Goya/A.N.E. owes each Plaintiff and Class Member.

105. Defendants have breached that duty, acted in bad faith, failed and refused to deal with the members of the Class fairly by:

    a. intentionally misclassifying the Class Members as independent contractors when, because of the level of Goya/A.N.E.'s control, the Class Members are actually employees;

    b. unilaterally restructuring routes to Goya/A.N.E.'s benefit and to the Brokers' detriment, without adequate compensation; and,

    c. otherwise depriving Plaintiffs of the benefit of their bargain with FXG.

106. Plaintiff and Class members have suffered losses as a direct and proximate result of the Defendant's breaches, unfair business practices and actions described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendants for compensatory damages, consequential damages, declaratory judgment and injunctive relief, plus costs, counsel fees, pre- and post-judgment interest, and such further relief as may be just and proper.

Dated:  October 15, 2019

**MARCHETTI LAW, P.C.**
Attorneys for Plaintiff

/s Anthony L Marchetti, Jr. AM4302
ANTHONY L. MARCHETTI, JR.

**SATTIRAJU & THARNEY, LLP**
Attorneys for Plaintiff
RAVI SATTIRAJU, ESQ.

**LICHTEN LISS-RIORDAN, P.C.**
Attorneys for Plaintiff
HAROLD L. LICHTEN, ESQ.
MATTHEW THOMSON, ESQ.
(PHV to be submitted)

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

                                    **MARCHETTI LAW, P.C.**
                                    Attorneys for Plaintiff


                                    /s Anthony L Marchetti, Jr. AM4302
                                    ANTHONY L. MARCHETTI, JR.


## DESIGNATION OF TRIAL COUNSEL

Anthony L. Marchetti, Jr., Ravi Sattiraju and Harold Lichten are hereby designated as trial attorney in the above captioned litigation on behalf of the Plaintiffs.

                                    **MARCHETTI LAW, P.C.**
                                    Attorneys for Plaintiff


                                    /sAnthony L Marchetti, Jr. AM4302
                                    ANTHONY L. MARCHETTI, JR.

                                    **SATTIRAJU & THARNEY, LLP**
                                    Attorneys for Plaintiff
                                    RAVI SATTIRAJU, ESQ.

                                    **LICHTEN LISS-RIORDAN, P.C.**
                                    Attorneys for Plaintiffs
                                    HAROLD L. LICHTEN, ESQ.
                                    MATTHEW THOMSON, ESQ.
                                    (PHV to be submitted)