## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------
JOSE ORTIZ individually and on behalf of   :   Hon. Stanley R. Chesler, U.S.D.J.
all others similarly situated,   :   Civil Action No. 2:19-cv-19003-SRC-CLW
  :
                  Plaintiff,   :               *Civil Action*
  :
v.   :
  :
  :
Goya Foods, Inc. and A.N.E. Services, Inc.,   :
  :
             Defendants.   :
------------------------------------------------------------

---

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

---

Ryan T. Warden
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
ryan.warden@ogletreedeakins.com
Tel:  (973) 656-1600
Fax:  (973) 656-1611
*Attorneys for Defendants Goya Foods, Inc.
and A.N.E. Service, Inc.*

On the Brief:

       Ryan T. Warden

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    FACTS ......................................................................................................... 2

     A.     Plaintiff's Broker Agreements Outlined His Independent Contractor Status
and Confirm He Did Not Service a Single Route or Customer in New Jersey. ..... 2

     B.     Plaintiff's Putative Class Action Complaint. ......................................... 5

III.   ARGUMENT ............................................................................................... 6

     A.     Standard Applicable to Motions for Judgment on the Pleadings ........................... 6

          1.     General Standard for Rule 12(c) Motions in the Third Circuit ................. 6

          2.     Evidence that May be Properly Considered in Connection with a Rule
12(c) Motion ......................................................................... 8

     B.     Plaintiff's NJWPL Claim, and the NJWPL Claims of the Putative Class
Plaintiff Seeks to Represent, Fail as a Matter of Law ............................................ 8

     C.     Plaintiff's Common Law Claims Fail as a Matter of Law .................................... 12

          1.     Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law ............... 13

          2.     Plaintiff's Claim for Breach of the Implied Covenant of Good Faith
and Fair Dealing Fails as a Matter of Law ................................................ 15

               a.     The Broker Agreements Expressly Provided Plaintiff Would
Be Treated as an Independent Contractor, and Thus, He Was
Not Deprived of the "Fruits of the Contract" by Being Treated
as Such ......................................................................... 16

               b.     The Broker Agreements Specifically Provide for the Unilateral
Restructuring of Routes, and Plaintiff Has Failed to Allege
Defendants Acted with Malice or Bad Motive, as is Required
to Support His Claim ................................................... 17

               c.     Plaintiff's Conclusory, Unadorned Allegation that he was
"Otherwise Deprived" of the Benefit of His Bargain, is
Insufficient to Support His Claim ................................. 20

IV.    CONCLUSION ............................................................................................ 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Argabright v. Rheem Manufacturing Company*,
   258 F.Supp.3d 470 (D.N.J. 2017) .........................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7, 8, 20

*Bamigbade v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 3096035 (3d Cir. Aug. 9, 2010).............................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................7

*Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*,
   2009 WL 3230840 (D.N.J. Oct. 2, 2009)..............................................................20

*Dawson v. Frias*,
   397 Fed. Appx. 739 (3d Cir. 2010) .......................................................................7

*Ferrante v. Amgen, Inc.*,
   2014 WL 1092555 (D.N.J. March 18, 2014) ........................................................17

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..................................................................................7, 8, 10

*Freedom Waste Solutions, Inc. v. Family Dollar*,
   No. 15-cv-4756 (SRC) 2015 WL 5996183 (D.N.J. Oct. 14, 2015) ....................13, 15

*Gaelick v. Connecticut General Life Ins. Co.*,
   2011 WL 3794228 (D.N.J. Aug. 25, 2011) ..........................................................19, 20

*Gengo v. Jets Stadium Development, LLC*,
   2018 WL 4144686 (D.N.J. Aug. 30, 2018) ..........................................................15, 18

*Gengo v. Jets Stadium Development, LLC*,
   776 Fed. Appx. 86 (3d Cir. 2019)..........................................................................15, 16

*Gonzalez v. United Recovery Systems, Inc.*,
   2012 WL 395523 (D.N.J. Feb. 6, 2012) ...............................................................17

*Hassler v. Sovereign Bank*,
   644 F.Supp.2d 509 (D.N.J. 2009) .........................................................................13, 14

*JOC Inc. v. ExxonMobil Oil Corporation*,
   2013 WL 12159044 (D.N.J. Jan. 22, 2013) ................................................................15, 19

*Lafferty v. Sherwin-Williams Company*,
   2018 WL 3993448 (D.N.J. Aug. 21, 2018) ..............................................................................12

*Lupian v. Joseph Cory Holdings, LLC*,
   240 F.Supp.2d 309 (D.N.J. 2017) .......................................................................................9, 11

*McCalley v. Samsung Electronics America, Inc.*,
   No. 07-2141 (JAG), 2008 WL 878402 (D.N.J. March 31, 2008)...........................................14

*Mele v. Federal Reserve Bank of New York*,
   359 F.3d 251 (3d Cir. 2004)..............................................................................................8, 10

*Overton v. Sanofi-Aventis U.S., LLC*,
   2014 WL 5410653 (D.N.J. Oct. 23, 2014).........................................................................9, 11

*Redick v. E Mortg. Management, LLC*,
   2013 WL 1089710 (D.N.J. March 15, 2013) ...........................................................................9

*Revell v. Port Authority of New York, New Jersey*,
   598 F.3d 128 (3d Cir. 2010)....................................................................................................6

*Rowe v. Morgan Stanley Dean Witter*,
   191 F.R.D. 398 (D.N.J. 1999)................................................................................................12

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
   2008 WL 2885887 (D.N.J. July 23, 2008)..............................................................................12

*Turbe v. Gov't of Virgin Islands*,
   938 F.2d 427 (3d Cir. 1991).....................................................................................................7

*Vega v. United Recovery Systems, L.P.*,
   2012 WL 458468 (D.N.J. Feb. 9, 2012) ...........................................................................15, 17

*Vengurlekar v. Silverline Technologies, Ltd.*,
   220 F.R.D. 222 (S.D.N.Y. 2003) ...........................................................................................11

*Wilson v. Amerada Hess Corp.*,
   168 N.J. 236 (2004) ...............................................................................................................19

## **Statutes**

NJWPL...................................................................................................1, 2, 5, 8, 9, 10, 11

## **Rules**

Third Circuit Rule 12 ................................................................................................................12

Rule 8(a)..............................................................................................................................20

Rule 12(b)(6).............................................................................................6, 7, 11, 12, 17

Rule 12(c)...........................................................................................................................6, 8

I.      **PRELIMINARY STATEMENT**

Defendants A.N.E. Service, Inc. ("ANE") and Goya Foods, Inc. ("GFI") respectfully submit this motion for judgment on the pleadings, seeking dismissal of Plaintiff Jose Ortiz's ("Plaintiff's") Complaint.

For the past 28 years, Plaintiff has performed services for ANE as an independent contractor sales broker, pursuant to two separate Broker Agreements, both of which explicitly provided he would be treated as an independent contractor, not as an employee.  Nevertheless, Plaintiff filed this putative class action in which he alleges that he, and the nationwide class of sales brokers he seeks to represent, have been misclassified as independent contractors when they were really employees, and asserts claims against Defendants alleging violations of the New Jersey Wage Payment Law ("NJWPL"), as well as claims for unjust enrichment and for breach of the implied covenant of good faith and fair dealing.  These claims fail as a matter of well-established law and must be dismissed.

Even if it is assumed for purposes of this motion that Plaintiff was misclassified as an independent contractor, which Defendants specifically deny, Plaintiff's NJWPL claim fails for the obvious reason that the NJWPL only applies to employees based in New Jersey.  Here, not only has Plaintiff failed to allege any facts which suggest he ever worked in New Jersey, but his Broker Agreements with ANE clearly establish that he did not.[1] Instead, as the Broker Agreements make clear, for the past three decades, all of Plaintiff's customers (and routes) have been located in rural Pennsylvania where he lives, with the exception of two Maryland customers he was responsible for servicing prior to August 2014.   Because Plaintiff's NJWPL claim fails,

---

[1] As discussed below, the Broker Agreements can be considered here because they are integral to Plaintiff's Complaint and are repeatedly referenced and relied on throughout same.

so too do the NJWPL claims of the putative class members.  However, even if the Court were to somehow conclude that Plaintiff's NJWPL claim should survive this motion, the NJWPL claims of the putative class must still be dismissed, as Plaintiff has not alleged that a single putative class member has ever performed any work in New Jersey, much less that any putative class member is "based" or "employed" in New Jersey, as would be necessary for the NJWPL to apply.

Plaintiff's common law claims – for unjust enrichment and breach of the implied covenant of good faith and fair dealing – fare no better.  Plaintiff's unjust enrichment claim fails because he has not alleged Defendants have been enriched beyond their contractual rights, which is a necessary element of the cause of action.  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails for a number of reasons, not the least of which is his failure to allege he has been deprived of the "fruits of his contract," which is essential to sustain such a claim.  For these reasons, and as discussed more fully below, the Court should grant Defendants' Motion for Judgment on the Pleadings, and dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.  FACTS

### A.  Plaintiff's Broker Agreements Outlined His Independent Contractor Status and Confirm He Did Not Service a Single Route or Customer in New Jersey.

Plaintiff Jose Ortiz ("Plaintiff") signed a Broker Agreement with ANE on May 24, 1991.[2] *See* 1991 Broker Agreement ("1991 Agreement"), attached as Exhibit A to the Declaration of Amauris Martinez, submitted herewith ("Martinez Cert."). This Agreement explicitly provided that Plaintiff would perform services as an independent contractor sales broker and not as an employee:

---

[2] Mr. Ortiz signed his first Broker Agreement on February 17, 1987.

> Independent Contractor Status.  The parties intend to create by this Agreement the
> relationship of an independent contractor and not an employer-employee
> relationship. Broker agrees to act as an independent sales solicitor for all purposes
> and not as an agent, representative or employee of Service. Service agrees to treat
> Broker as an independent sales solicitor for all purposes and not as an agent,
> representative or employee of Service.

*Id.* at ¶ 1.

Under the 1991 Agreement, Plaintiff agreed to be responsible for all expenses "of every nature and kind that may be incurred by Broker in connection with the performance of the terms of this Agreement," that these expenses "shall be borne wholly and completely by Broker" and that "[ANE] shall not be in any way responsible or liable therefor." *Id.* at ¶ 8. The 1991 Agreement further provided that Mr. Ortiz "shall obtain proper and adequate liability insurance for property damage and bodily injury" (*id.* at ¶ 7); that he is responsible "to pay, and remain exclusively liable for, all employment tax and withholding obligations" with respect to any of his employees; and that he must pay for workers' compensation coverage for all such individuals (*id.* at ¶ 6).

Paragraph 1 of the 1991 Agreement outlined the "Scope of [Plaintiff's] Engagement" and provided that Plaintiff was being engaged "for the purpose of soliciting orders for sales of the consumer products" identified in Schedule "A", to customers on the sales route set forth in Schedule "B," both of which were attached to the 1991 Agreement, and incorporated therein by reference. *Id.* at ¶ 1, Schedules A and B.   As is clear from the face of Schedule B, the accounts Plaintiff was responsible for servicing under the 1991 Agreement were all located in Pennsylvania, aside from two accounts located in Hagerstown, Maryland.[3] *Id.*, Schedule B. Critically, Plaintiff did not service a single customer account in New Jersey.   The 1991

---

[3] The customer names and street addresses on Schedule B have been redacted because such information is confidential. Defendants intend to propose to Plaintiff a Consent Protective Order to govern the disclosure and use of all such confidential information.

Agreement also explicitly provided that "[Plaintiff's] sales route may be altered from time to time, by [ANE]."  *Id.* at ¶ 1.

On August 29, 2014, Grateful Souls, LLC ("Grateful Souls"), a company owned and operated by Plaintiff, entered into a new Broker Agreement with ANE, which has governed the parties' relationship ever since, and remains in effect to this day ("2014 Agreement"). *See* 2014 Agreement attached as Exhibit B to Martinez Cert. Under this Agreement, Plaintiff, on behalf of and as the individual holding the majority ownership in Grateful Souls,[4] again agreed to perform services for ANE as an independent contractor sales broker, specifically expressing his intention that no employment relationship would be formed:

> The parties intend to create by this Agreement the relationship of independent contractor and not an employer-employee relationship and the parties hereby signify their express intention to this effect. Broker agrees to act as an independent contractor for all purposes while performing services under this Agreement and not as an agent, representative or employee of A.N.E. A.N.E. agrees to treat Broker as an independent contractor for all purposes and not as an agent, representative or employee of A.N.E.

*Id.* at ¶ 4(a).

Like the 1991 Agreement, the 2014 Agreement establishes Plaintiff's "Sales Route," and specifies the names and locations of the customer accounts for which Plaintiff is responsible – none of which are located in New Jersey.[5] *Id.* at ¶ 1, Exhibit B.  Instead, as is clear from the face of Exhibit B to the 2014 Agreement, all of Plaintiff's customers are located in Pennsylvania. The 2014 Agreement also vests ANE with the right to unilaterally reconfigure Plaintiff's sales route to "enhance customer service and sales." *Id.* at ¶¶ 1, 6.

---

[4] For ease of reference, Plaintiff and Grateful Souls will hereinafter be collectively referred to as "Plaintiff" when discussing the 2014 Broker Agreement and the parties' rights and obligations thereunder.

[5] As with Schedule B to the 1991 Broker Agreement, above, the customer names and street addresses on Exhibit B to the 2014 Broker Agreement have been redacted because such information is confidential. Defendants intend to propose to Plaintiff a Consent Protective Order to govern the disclosure and use of all such confidential information.

In addition, the 2014 Agreement specifically addresses Plaintiff's responsibility for all expenses incurred in connection with the performance of the Agreement and provides that "A.N.E. shall not be in any way responsible or liable therefor." *Id.* at ¶ 8. The Agreement also specifies that Plaintiff is responsible for automobile insurance coverage for bodily injury and property damage and workers' compensation insurance for himself and any of his employees. *Id.* at ¶ 7.

Finally, both Agreements explicitly set forth the manner in which Plaintiff will be compensated, including the commission structure, when the commissions are deemed earned, Plaintiff's responsibility for a portion of "bad debts," and other items. *See* 1991 Agreement at ¶¶ 14, 17; 2014 Agreement at ¶¶ 13, 16.

### B.    Plaintiff's Putative Class Action Complaint.

On October 15, 2019, Plaintiff filed his Complaint in this matter, asserting claims against Defendants for alleged violations of the NJWPL, as well as for unjust enrichment and breach of the implied covenant of good faith and fair dealing, on behalf of himself and a putative class. *See* Dkt. 1 at ¶ 2.  Therein, Plaintiff asserts that Defendants "misclassify Plaintiff and members of the proposed class to reduce costs, shift the costs of operating Goya's sales force to the individuals who perform the work and to avoid worker and wage protection laws," including obligations like workers' compensation and "the right to be free from illegal wage deductions." *Id.* at ¶ 9. Plaintiff contends that Defendants have "illegally shifted . . . the burden of purchasing and maintaining certain tools, equipment and supplies," make "deductions" from Plaintiff and proposed class members' pay, and "force[] Plaintiff and the proposed class to pay for their own workers' compensation and other insurance." *Id.* at ¶ 13.  Plaintiff claims that he, "like all members of the proposed class, ha[s] a relationship [with Defendants] that is governed by

Defendants' Broker Agreement," which he repeatedly references throughout the Complaint. *See, e.g., id.* at ¶¶ 5, 11, 19, 22, 27, 34, 43, 44, 71 (all referencing the Broker Agreements).

Plaintiff also alleges that he, "like the other 300 individuals who hold the same position throughout the country," services Goya's customers "in a geographic area set by Goya." *Id.* at ¶ 10. While Plaintiff claims he "has been a full-time sales representative for Goya at its Jersey City, New Jersey location," nowhere does he allege a single fact that would support a conclusion that he has actually performed any work in New Jersey.   Similarly, Plaintiff fails to allege that any of the putative class members performed any work in New Jersey, instead repeatedly asserting that they worked "throughout the country" or "throughout the United States." *See, e.g.*, *id.* at ¶¶ 10, 25.   Finally, Plaintiff admits that he "is a citizen of the Commonwealth of Pennsylvania" and that he resides in Pennsylvania. *Id.* at ¶ 15.

For the reasons set forth below, Plaintiff's Complaint must be dismissed in its entirety, with prejudice.

## III.   ARGUMENT

### A.    Standard Applicable to Motions for Judgment on the Pleadings

#### 1.    General Standard for Rule 12(c) Motions in the Third Circuit

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay the trial." *Fed. R. Civ. P.* 12(c).  Where, as here, a motion for judgment on the pleadings is based on the defense that the plaintiff has failed to state a claim, it is analyzed under the same standards that apply to a Rule 12(b)(6) motion.[6]  *Revell v. Port Authority of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe*, 938 F.2d at 428).

---

[6] The only practical difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that a Rule 12(b)(6) motion must be made before filing an answer, whereas a Rule 12(c) motion may be made after the answer has been

In evaluating motions to dismiss for failure to state a claim in the aftermath of the Supreme Court's landmark decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it is plain that conclusory "bare bones" allegations that "the defendant unlawfully harmed me" do not suffice. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Likewise, a complaint which offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, to survive a motion to dismiss under the current law, a civil complaint must include "sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotations omitted).

The Third Circuit has instructed district courts on the proper two-part analysis when presented with a Rule 12(b)(6) motion to dismiss in the aftermath of *Iqbal* and *Twombly*. First, the factual and legal elements of a claim should be separated. *Fowler*, 578 F.3d at 210. The District Court must accept all of the complaint's well-pleaded allegations as true, but should disregard any legal conclusions or mere assertions "devoid of further factual enhancement." *Id.*; *Dawson v. Frias*, 397 Fed. Appx. 739, 741 (3d Cir. 2010); *see also Bamigbade v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3096035 (3d Cir. Aug. 9, 2010) ("The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (quoting *Iqbal*, 556 U.S. at 678). Significantly, "a plaintiff armed with nothing more than conclusions" "does not unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-79.

Second, the district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Fowler*, 578 F.3d at 211. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

filed. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citations omitted). In other words, a complaint must do more than allege the plaintiff's entitlement to relief. *Fowler*, 578 F.3d at 211. A complaint has to show such an entitlement to relief with its facts. *Id*.

### 2.  Evidence that May be Properly Considered in Connection with a Rule 12(c) Motion

Although the general rule is that a district court ruling on a motion to dismiss may not consider matter extraneous to the pleadings, an exception to this rule provides that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion to dismiss into one for summary judgment." *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256, n.5 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (internal alterations omitted). Here, the Broker Agreements, which Plaintiff explicitly references and relies on throughout his Complaint, clearly fall within the exception and may be properly considered by the Court.

Applying this standard, and in light of the allegations in the Complaint and the plain language of the Broker Agreements Plaintiff signed, Plaintiff has failed to state any claim against Defendants, on behalf of himself or the class he seeks to represent. Therefore, all such claims must be dismissed, with prejudice.

### B.  Plaintiff's NJWPL Claim, and the NJWPL Claims of the Putative Class Plaintiff Seeks to Represent, Fail as a Matter of Law

The New Jersey Wage Payment Law governs the timing and mode of payment by New Jersey employers to New Jersey employees. It is well-established that the NJWPL does not apply extra-territorially. The courts that have addressed the issue have uniformly held that "the

NJWPL **does not** apply to employees based outside of New Jersey." *Overton v. Sanofi-Aventis U.S., LLC*, 2014 WL 5410653, *5 (D.N.J. Oct. 23, 2014) (emphasis in original) (collecting cases); *see also*, *e.g.*, *Lupian v. Joseph Cory Holdings, LLC*, 240 F.Supp.2d 309, 313-14 (D.N.J. 2017) ("it is well settled that New Jersey law does not regulate conduct outside the state," and that the courts that have considered the issue have "all held that the NJWPL *does not* apply to employees based outside of New Jersey") (quoting *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 539-40 (1993), and *Overton*, *supra*, respectively) (internal quotations omitted, emphasis in original); *Redick v. E Mortg. Management, LLC*, 2013 WL 1089710, *12 (D.N.J. March 15, 2013) ("Taken together, the text of portions of the New Jersey Wage [Payment] Law, the guidance provided by New Jersey state courts, the opinions of legal commentators and the decisions of federal courts interpreting the Law *all tend to point in one direction – they suggest that the Law is only applicable to those working within New Jersey's geographical boundaries*. This conclusion makes sense, given the well-settled principle that New Jersey employment law regulates conduct that occurs within New Jersey—and not conduct occurring outside of the state's territorial boundaries.  In light of the guidance provided by these authorities, the Court is sufficiently persuaded that Plaintiff would not ultimately be able to bring his wage claim pursuant to the terms of the New Jersey Wage [Payment] Law.") (emphasis and alterations supplied).

Here, even if we assume for the purposes of this motion that Plaintiff was misclassified as an independent contractor and must be treated as an employee, which Defendants deny, his NJWPL claim fails for the simple reason that his "employment" was never "based" in New Jersey. Therefore, he cannot avail himself of the rights and remedies set forth in the statute. Nowhere in his Complaint does Plaintiff allege any *facts* that support the conclusion that his

"employment" with Defendants has ever been based in New Jersey. Indeed, the allegations in the Complaint, coupled with the express terms of his Broker Agreements themselves -- which are repeatedly referenced throughout the Complaint and thus can be properly considered here[7] -- compel the conclusion that it never has been.

As an initial matter, although Plaintiff alleges that he "has been a full-time sales representative for Goya at its Jersey City, New Jersey location since the mid-1980s," this is precisely the sort of "legal conclusion" or "mere assertion" that courts must ignore when ruling on motions to dismiss. *Fowler*, 578 F.3d at 210. This is particularly true given Plaintiff's allegations in Paragraph 10 of the Complaint that Goya sets the customer base and that his Broker Agreements establish that such customer base was outside New Jersey. As controlling precedent makes clear, it was incumbent on Plaintiff to allege *facts* that make his claims "plausible." *Id.* at 211. For purposes of his NJWPL claim, this required Plaintiff to allege facts that permit the conclusion that his "employment" with Defendants is based in New Jersey, such as that he regularly calls on and/or services customers in New Jersey, or that he maintains and regularly reports to an office in New Jersey. He has utterly failed to do so. Indeed, despite alleging repeatedly in his Complaint that the putative national class of sales brokers sell to and service Defendants' customers "throughout the United States," each in geographical areas selected by Defendants, *nowhere* does Plaintiff allege any *facts* regarding the geographical area in which he allegedly performed services for Defendants, much less that he performed such services in New Jersey. This is not surprising given Plaintiffs' Broker Agreements with ANE

---

[7] The Broker Agreements – and specifically, Plaintiff's customer and route lists expressly set forth therein – are exactly the kind of evidence covered by the "integral document" exception discussed above, given Plaintiff's repeated reference to the Broker Agreements throughout his Complaint. *See* Facts Section, above. Application of the exception is imperative here, to ensure Plaintiff does not survive this motion "by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement did not support the claim." *Mele,* 359 F.3d at 256, n.5 (citing *In re Burlington*, 114 F.3d at 1426) (internal quotations omitted).

make clear *he has never serviced any customers or routes in New Jersey.*  Instead, over the past 28 years (during which Plaintiff's relationship with ANE has been governed by his two most-recent Broker Agreements) the overwhelming majority of Plaintiff's customers in his routes have been located in rural Pennsylvania, where he lives, with the only other two others being located in Maryland.  *See* 1991 Broker Agreement, Schedule B; 2014 Broker Agreement, Exhibit B. Courts have uniformly granted early motions to dismiss NJWPL claims asserted by plaintiffs, like Ortiz, whose employment was "based" outside of New Jersey.  *See*, *e.g.*, *Overton*, 2014 WL 5410653, *5-6 (granting defendant's Rule 12(b)(6) motion to dismiss plaintiffs' NJWPL claims where plaintiffs' employment was not based in New Jersey); *Lupian*, 240 F.Supp.2d at 313-14 (same). <u>The result can be no different here</u>.

Of course, even if the Court somehow concludes that Plaintiff should be permitted to proceed on his individual NJWPL claim, the NJWPL claim as to the putative class must be dismissed, because nothing in the Complaint suggests that the NJWPL applies to a single putative class member.  Here, Plaintiff seeks to represent a putative nationwide class of brokers whom he alleges performed work in select geographical regions "throughout the country."  The Complaint does not contain a single allegation that suggests that any, much less all, of the members of the putative class were "employed" in New Jersey, as would be necessary for the NJWPL to apply to them.  *See*, *e.g.*, *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 232 (S.D.N.Y. 2003) ("What is evident is that it is far from clear that the [NJWPL] applies to all of the wage claims of the proposed class members. … Thus, whether analyzed in terms of commonality, typicality or predominance, the cohesiveness between plaintiffs and the class members needed to justify class certification is glaringly absent.").

Third Circuit courts dismiss class action claims at the pleading stage where, as here, it is clear from the face of the complaint that *Fed. R. Civ. P.* 23's requirements have not been or cannot be met.  *See*, *e.g.*, *Lafferty v. Sherwin-Williams Company*, 2018 WL 3993448, *5 (D.N.J. Aug. 21, 2018) (dismissing plaintiff's class claims and observing "[d]espite Plaintiffs' citations from other circuits stating otherwise, within the Third Circuit Rule 12 can be used to dismiss class allegations that fail to satisfy *Fed. R. Civ. P.* 12(b)(6)");  *Smith v. Lyons, Doughty & Veldhuius, P.C.*, 2008 WL 2885887, *5 (D.N.J. July 23, 2008) (dismissing plaintiffs' class claims, finding that "[i]t appear[ed] from the face of the Complaint that th[e] class c[ould not] satisfy the predominance requirement," and concluding that it was "highly improbable that the[] issues c[ould] be resolved using class-wide proof"); *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 402-04, 406-10 (D.N.J. 1999) (granting motion to dismiss plaintiffs' class action claims, even under much more lenient *Conley v. Gibson* standard and notwithstanding plaintiffs' allegations that Rule 23 requirements had been satisfied, where court determined that plaintiffs had not satisfied the "numerosity" requirement with regard to their unsuitability claims and where the resolution of plaintiffs' churning claims would rest predominately on individual issues of fact rather than on common ones).  The same result should be reached here.

### C.    Plaintiff's Common Law Claims Fail as a Matter of Law

Plaintiff also asserts two common law claims, for unjust enrichment and breach of the implied covenant of good faith and fair dealing.  Both of these claims fail as a matter of law and must be dismissed.  At bottom, Plaintiff's common law claims are premised on his contention that the terms of the Broker Agreements are unfair to him and that Defendants have been unjustly enriched and have breached the implied covenant of good faith and fair dealing *through the parties' performance of their obligations under the express terms of the Broker Agreements*.

12

In so arguing, Plaintiff seems to misunderstand what these causes of action require, and fails to state a claim for either, whether in his individual capacity or on behalf of the putative class he seeks to represent.

### 1.    Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law

To establish a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable."  *Hassler v. Sovereign Bank*, 644 F.Supp.2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 144 N.J. 564, 575 (1996).  It is well-established, however, that a plaintiff cannot satisfy this second prong "unless it can establish that the failure of remuneration enriched defendant *beyond its contractual rights*."  *Id.* at 519 (emphasis in original) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)); *see also Freedom Waste Solutions, Inc. v. Family Dollar*, No. 15-cv-4756 (SRC) 2015 WL 5996183, *4 (D.N.J. Oct. 14, 2015) ("To establish a claim for unjust enrichment under New Jersey law, a plaintiff must show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.") (internal quotations omitted).  "As this requirement makes clear, *the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract*."  *Id.* at 519 (collecting cases) (emphasis supplied).

Here, Plaintiff has not made a single allegation that Defendants have been enriched beyond their contractual rights. To the contrary, as Plaintiff's unjust enrichment allegations make clear, Plaintiff's unjust enrichment claim is premised on the theory that Defendants have been unjustly enriched *through the parties' performance of their obligations pursuant to the express terms of the Broker Agreements*:

96. *The Broker Agreement illegally and unfairly advantages Goya/A.N.E., by* mischaracterizing the status of the Plaintiff in that Goya/A.N.E. evade employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, make illegal wage deductions, illegally shifting the expense of workers' compensation coverage and other expenses to Plaintiff.

\*      \*      \*

100. By misclassifying its employees as "independent contractors," and further *by contractually requiring those employees to pay Goya/A.N.E. [sic] own expenses, Goya/A.N.E. have been unjustly enriched.*

101. As a direct and proximate result of Defendants' conduct, Defendants have received substantial benefits to which they had no entitlement, at Plaintiff's and the Class Members' expense, including lost profits, self-employment taxes, premiums for workers' compensation insurance, business expenses, compensation of replacement workers, and other expenses.

102. Plaintiff and members of the class are entitled to restitution for all of the business expenses they were illegally required by Goya/A.N.E. to bear, for all of the employment taxes, unemployment compensation, workers [sic] compensation and other costs/benefits that Goya/A.N.E. should have but did not pay, and Plaintiff and Class members are entitled to the quantum meruit value of their services as employees.

*See* Dkt. 1 at ¶¶ 96, 100-102. (emphasis supplied).

An unjust enrichment claim premised on the theory that a defendant has been enriched pursuant to the express terms of a contract is not an unjust enrichment claim at all. This Court has repeatedly granted early motions to dismiss unjust enrichment claims where, as here, plaintiffs have failed to allege the defendant was enriched beyond its contractual rights. *See*, *e.g.*, *Hassler*, 644 F.Supp.2d at 520 (granting motion to dismiss where defendant's conduct was permitted under the express terms of the parties' contract, and where plaintiff failed to allege defendant was enriched beyond its contractual rights); *Argabright v. Rheem Manufacturing Company*, 258 F.Supp.3d 470, 493 (D.N.J. 2017) (granting motion to dismiss where plaintiff failed to allege defendant had been enriched beyond its contractual rights); *McCalley v. Samsung*

*Electronics America, Inc.*, No. 07-2141 (JAG), 2008 WL 878402, * 10 (D.N.J. March 31, 2008) (same); *Freedom Waste Solutions*, 2015 WL 5996183 at *4 (same).  Accordingly, Plaintiff's unjust enrichment claim must be dismissed, with prejudice.

### 2. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as a Matter of Law

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fares no better.   In New Jersey, the implied covenant of good faith and fair dealing is inherent in every contract, and "prohibits either party to a contract from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *JOC Inc. v. ExxonMobil Oil Corporation*, 2013 WL 12159044, *19 (D.N.J. Jan. 22, 2013) (quoting *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997)); *Vega v. United Recovery Systems, L.P.*, 2012 WL 458468, *4 (D.N.J. Feb. 9, 2012); *see also Gengo v. Jets Stadium Development, LLC*, 2018 WL 4144686, *4 (D.N.J. Aug. 30, 2018) ("The party claiming breach of the implied covenant bears the burden of providing evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.") (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005)) (internal quotations and alterations omitted), *aff'd by* 776 Fed. Appx. 86 (3d Cir. 2019).  "Although the implied covenant is as valid and effective as any express covenants in the contract, it cannot override express contractual terms, nor may it be invoked to preclude a party from exercising its express rights under such an agreement."  *Gengo*, 2018 WL 4144686 at *4 (internal citations and quotations omitted).  "Bad motive or intention is an essential element of such a cause of action."  *Id.* (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2004)).

Here, Plaintiff alleges Defendants breached the implied covenant in the following ways:

a.   Intentionally misclassifying the Class Members as independent contractors when, because of the level of Goya/A.N.E.'s control, the Class Members are actually employees;

b.   Unilaterally restructuring routes to Goya/A.N.E.'s benefit and to the Brokers' detriment, without adequate compensation; and,

c.   Otherwise depriving Plaintiffs of the benefit of their bargain with [Defendants].

*See* Dkt. 1 at ¶ 105(a)-(c).   These allegations are woefully insufficient to establish a valid claim for the breach of the implied covenant.

### a.   The Broker Agreements Expressly Provided Plaintiff Would Be Treated as an Independent Contractor, and Thus, He Was Not Deprived of the "Fruits of the Contract" by Being Treated as Such

As an initial matter, Plaintiff cannot reasonably argue that he was deprived of the fruits of the contract by being classified as an independent contractor, because, as Plaintiff acknowledges in his Complaint, *the Broker Agreements contain express terms which make clear he would be treated as an independent contractor and not an employee.  See*, *e.g.*, Dkt. 1 at ¶ 34 ("The Agreement characterizes each sales representative as an "independent contractor."); 1991 Broker Agreement at ¶ 3 ("The parties intend to create by this Agreement the relationship of an independent contractor and not an employer-employee relationship."); 2014 Broker Agreement at ¶ 4.a. ("The parties intend to create by this Agreement the relationship of independent contractor and not an employer-employee relationship and the parties hereby signify their express intention to this effect.").  Obviously, Plaintiff cannot demonstrate that his independent contractor status has deprived him of the fruits of a contract which made clear he'd be treated as an independent contractor.  This Court (and indeed, this Judge) has routinely granted early motions to dismiss claims for breaches of the implied covenant where, as here, plaintiffs have not been deprived of the fruits of their contracts.  *See*, *e.g.*, *Gengo v. Jets Stadium Development,*

*LLC*, 776 Fed. Appx. 86, 87 (3d Cir. 2019) (affirming *this Court's* Rule 12(b)(6) dismissal of plaintiff's claim, finding "[plaintiff's] claim under the implied covenant of good faith and fair dealing fails because he has received the fruits of his contract."); *Gonzalez v. United Recovery Systems, Inc.*, 2012 WL 395523, *3 (D.N.J. Feb. 6, 2012) (granting Rule 12(b)(6) motion to dismiss where "Plaintiff fail[ed] to set forth factual bases for her allegation that Capital One's conduct deprived Plaintiff of her reasonably expected fruits under an express contract…"); *Vega*, *supra*, 2012 WL 458468, *4 (D.N.J. Feb. 9, 2012) (same); *Ferrante v. Amgen, Inc.*, 2014 WL 1092555, *6, n.5 (D.N.J. March 18, 2014) (denying plaintiff's motion for leave to amend complaint to assert claim for breach of the implied covenant where plaintiff failed to allege that "defendant's acts serve[d] to deprive plaintiff of the reasonably expected 'fruits of the contract'").

> **b.     The Broker Agreements Specifically Provide for the Unilateral Restructuring of Routes, and Plaintiff Has Failed to Allege Defendants Acted with Malice or Bad Motive, as is Required to Support His Claim**

Likewise, Plaintiff's claim for breach of the implied covenant fails to the extent it is premised on his allegation that Defendants unilaterally restructured his routes to their benefit and his detriment.  Again, both Broker Agreements specifically address the issue.

The 1991 Broker Agreement provides, in relevant part, as follows:

> Scope of Engagement.  [ANE] hereby engages Broker as an independent sales solicitor for the purposes of soliciting orders for sales of the consumer products listed in Schedule "A" annexed hereto, and as may be amended from time to time by agreement of the parties (collectively, "the Products"), on such sales route as listed in Schedule "B"; *provided, such sales route may be altered from time to time, by [ANE]*.

*See* 1991 Broker Agreement at ¶ 1 (emphasis and alterations supplied).

Similarly, the 2014 Broker Agreement provides:

Mutual Intention to Reconfigure Size of Sales Route:  Broker recognizes that as the customer and/or consumer base within the Sales Route increases, the size of the sales route which Broker may be able to satisfactorily service may decrease. Broker further recognizes, however, that increased customer density and decrease within the Sales Route may benefit Broker due to the Broker's ability to provide enhanced customer service at less expense.  Broker and A.N.E. mutually agree to work together to achieve maximum sales results.  *Broker and A.N.E. further agree that upon ten (10) calendar days notice, A.N.E. shall have the right to reconfigure Broker's Sales Route to enhance customer service and sales.  During such notice period, A.N.E., in its sole discretion, will take into consideration whether it believes Broker can meet the enhanced service levels that would result from reconfiguration.  If A.N.E., in its sole discretion, decides that Broker cannot meet such enhanced service levels, A.N.E. can implement the planned reconfiguration. In such event, Broker shall receive a temporary adjustment to the commission rate for a period generally between three and six months for sales routes resulting in lower projected annual sales following the reconfiguration to help brokers transition to their new sales routes.  This temporary adjustment, which will be determined by A.N.E. in its sole discretion, will be structured to compensate and reward brokers for business development and increased sales and will also take into account current business and opportunities for future growth.*

*See* 2014 Broker Agreement at ¶ 4 (emphasis supplied).  Moreover, Plaintiff's "Sales Route"

which is attached as Exhibit B to the 2014 Broker Agreement, specifically provides:

Your "Sales Route" under this Agreement includes all customers listed below. *This Sales Route may be amended from time to time at A.N.E.'s sole discretion, to add or delete customers*.  Your Sales Route is non-exclusive.  Other Brokers' sales routes may overlap with yours, and they may service their customers in such overlapping sales routes.

*See* 2014 Broker Agreement, Exhibit B (emphasis supplied).

These express contractual terms sound the death knell for Plaintiff's claim.  Because the

Broker Agreements specifically afford ANE the right to restructure Plaintiff's routes unilaterally,

Plaintiff cannot demonstrate that Defendants have deprived him of the "benefit of his bargain" or

the "fruits of the contract" by doing so.  As explained above, this is fatal to his claim for breach

of the implied covenant.  *See also*, *e.g.*, *Gengo*, *supra*, 2018 WL 4144686 at *5 (dismissing

plaintiff's claim for breach of the implied covenant where plaintiff received the "reasonably

expected fruits under the contract", and observing that the parties' contract "provides the clearest

indication of the parties' reasonable expectations"); *JOC*, *supra*, 2013 WL 12159044 at *20 (dismissing plaintiff's claim for breach of the implied covenant where plaintiff "failed to show that it was at any time denied the reasonably expected fruits of the [parties' agreement]," and observing, [i]ndeed, much of what [plaintiff] complains of is specifically contemplated by the [parties' agreement]").  Relatedly, it is black letter law that the implied covenant *cannot override express contractual terms*, which is precisely what Plaintiff appears to advocate here.

But even if the Broker Agreements did not specifically vest ANE with the right to unilaterally restructure Plaintiff's routes, Plaintiff's claim that Defendants breached the implied covenant by doing so would fail for the simple reason that he has failed to adequately allege "malice or bad motive" on the part of Defendants, "a deficiency which is fatal to [his] claim." *Gaelick v. Connecticut General Life Ins. Co.*, 2011 WL 3794228, *6 (D.N.J. Aug. 25, 2011). The Supreme Court of New Jersey has clearly held that "bad motive" is "essential" to a claim for breach of the implied covenant:

> [A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.  *Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.  Bad motive or intention is essential*, for, as stated by the United States Court of Appeals for the Seventh Circuit, "*[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper.*"

*Wilson*, 168 N.J. at 251 (citations omitted, quotations in original, emphasis supplied).

In light of this precedent, Plaintiff's allegation – that Defendants "unilaterally restructure[ed] routes to [Defendants'] benefit and to the Brokers' detriment, without adequate compensation" – falls well short of establishing the type of "malice" or "bad faith" on the part of Defendants as would be required for Plaintiff to adequately state his claim.  Indeed, it is well-established that "a party does not breach the implied covenant of good faith and fair dealing

merely because its decisions disadvantaged another party," which is all that Plaintiff has alleged here.  *Gaelick*, *supra*, 2011 WL 3794228 at *6.

> ### c.      Plaintiff's Conclusory, Unadorned Allegation that he was "Otherwise Deprived" of the Benefit of His Bargain, is Insufficient to Support His Claim

Finally, Plaintiff's claim for breach of the implied covenant fails to the extent it is premised on his allegation that Defendants "otherwise depriv[ed] plaintiffs of the benefit of their bargain with *FXG*."  *See* Dkt. 1 at ¶ 105(c) (emphasis supplied).  Plaintiff has failed to supply any "factual" support for this conclusion, which is precisely the type of "conclusory and unadorned allegation" that courts must ignore when ruling on motions to dismiss for failure to state a claim.[8]  *See, e.g.*, *Coldwell Banker Real Estate, LLC v. Plummer & Associates, Inc.*, 2009 WL 3230840, *4 (D.N.J. Oct. 2, 2009) ("[Counter-claimants'] averment that [counter-defendant] breached the implied covenant of good faith and fair dealing by engaging in 'other acts' with the aim of frustrating [counter-claimants'] ability to perform under the franchise agreements amounts to the kind of conclusory and unadorned allegation that *Iqbal* held will not suffice to state a claim under Rule 8(a)").

---

[8] In addition, Plaintiff's failure to even change the name of the defendant reflected in the allegation ("FXG") to reflect the names of the actual Defendants in this case exposes this allegation as recycled boilerplate, rather than a *factual* allegation specific to this case.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Defendants*


By:   <u>*s/ Ryan T. Warden*</u>
Ryan T. Warden

Dated:  February 7, 2020

41730881.1

21