|  |  |  |
|---|---|---|
| | : | |
| JOSE ORTIZ, individually and on behalf of | : | **Civil Action No. 19-19003 (SRC)** |
| all others similarly situated, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GOYA FOODS, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), filed by Defendants Goya Foods, Inc. ("Goya") and A.N.E. Services, Inc. ("A.N.E.") (collectively, "Defendants"). Plaintiff Jose Ortiz ("Plaintiff" or "Ortiz") has opposed the motion.[1] Ortiz has filed his own motion for leave to file an Amended Complaint, which the Court also addresses in this Opinion. For the reasons that follow, Defendants' motion for judgment on the pleadings will be granted in its entirety. However, the Court will not close the case, but instead, pursuant to Federal Rule of Civil Procedure 15(a), permit Plaintiff to cure the Complaint's deficiencies and file an Amended Complaint, consistent with the analysis set forth below.

---

[1] In addition to his opposition brief, Plaintiff submitted a sur-reply and requested that the Court accept the filing. The Court has considered the sur-reply, as well as all other papers filed by the parties in connection with the motion.

## I. BACKGROUND

Briefly, this is a labor misclassification action. Plaintiff Ortiz, a resident of Pennsylvania, is a sales representative for Defendant Goya, a Delaware corporation headquartered in Jersey City, New Jersey.[2] Goya is engaged in the manufacturer and distribution of food products. Defendant A.N.E. is a wholly-owned subsidiary of Goya Foods. According to the Complaint, A.N.E. functions as an intermediary between Goya and its sales force and requires Goya's sales representatives, including Ortiz, to enter into a form Broker Agreement for their services. Ortiz alleges that he has been a sales representative for Goya since the mid-1980s. In or about August 2014, he began performing his work through a business entity known as Grateful Souls, LLC, a company he alleges Defendants required him to form as a condition of continuing his relationship with Defendants. According to the Complaint, Ortiz is one of over 300 Goya sales representatives nationwide.

The Complaint, filed as a putative class action, avers that Ortiz and other similarly situated sales representatives have been improperly treated as independent contractors when they are, in fact, employees of Goya. According to the Complaint, they have been misclassified by Defendants in order to "reduce costs, shift the costs of operating Goya's sales force to the individuals who perform the work and to avoid worker and wage protection laws, including obligations as basic as workers compensation rights and the right to be free from illegal wage deductions." (Compl., ¶ 9.) The Complaint alleges: "Defendants have illegally shifted to Plaintiff and the members of the proposed class the burden of purchasing and maintain certain tools,

---

[2] The Court uses terms such as "sales representative" and "employee" throughout this Opinion, consistent with the allegations of the Complaint. It acknowledges that Defendants have characterized Ortiz as a "sales broker" and "independent contractor." This disagreement goes to the core of the instant dispute, but the Court makes no findings regarding the merits of the claims in using certain terms to describe the relationship between Plaintiff and Defendants.

equipment and supplies necessary to operate Defendants' business, makes deductions from the

their pay, and forces Plaintiff and the proposed class to pay for their own workers' compensation

and other insurance." (Id., ¶ 13.) Ortiz seeks relief for himself and the putative class under the

following causes of action: violation of the New Jersey Wage Payment Law ("NJWPL"),

N.J.S.A. 34:11-4.1, et seq., unjust enrichment, and breach of the implied covenant of good faith

and fair dealing.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## II.     DISCUSSION

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the

pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P.

12(c). Where, as here, a Rule 12(c) motion challenges the sufficiency of a claim for failure to

state a claim upon which relief may be granted, the motion is governed by the same standard

applicable to Rule 12(b)(6) motions. Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir.

1991). Therefore, to survive a motion for judgment on the pleadings, the complaint must contain

"sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S.

544, 570 (2007)). This plausibility standard is satisfied where the complaint "pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In considering the Rule 12(c)

motion, the court must view "the facts alleged in the pleadings and the inferences to be drawn

from those facts in the light most favorable to the plaintiff." D.E. v. Cent. Dauphin Sch. Dist.,

765 F.3d 260, 271 (3d Cir. 2014) (internal citations omitted). At the Rule 12(c) stage, a court

"court generally considers only the complaint, any attached exhibits, documents relied upon in

the complaint, matters of public record, and any indisputably authentic documents." Hlista v.

Safeguard Properties, LLC, 649 F. App'x 217, 218 (3d Cir. 2016) (internal citations omitted).

**B. Statutory Misclassification Claim under the New Jersey Wage Payment Law**

Defendants seek dismissal of Plaintiff's NJWPL claim on the grounds that the statute has

no extraterritorial application and thus cannot provide relief to Ortiz for any alleged

misclassification of work he performed entirely outside of New Jersey. For the reasons that

follow, the Court agrees.

The NJWLP imposes various obligations on employers, including that they pay

employees the full amount of wages due on a regular established schedule of paydays. See

N.J.S.A. 34:11-4.2. It also prohibits employers from withholding or diverting wages, except as

specifically authorized "by New Jersey or United States law" or for the enumerated purposed

under the statute. Id. at 34:11-4.4 While the statute itself does not expressly limit the availability

of relief thereunder to individuals employed in the State of New Jersey, it defines the term

"employer" as any individual, partnership, corporation, or various other entities "employing any

person in this State." Id. 34:11-4.1.

Defendants argue that the NJWPL provides protection for employees based in New

Jersey, not those who live and work elsewhere. Decisions by other courts in the District of New

Jersey that have addressed the reach of the NJWPL support Defendants' argument. See Lupian v.

Joseph Cory Holding, LLC, 240 F. Supp. 3d 309, 313-14 (D.N.J. 2017), aff'd on other grounds

by 905 F.3d 127 (3d Cir. 2018); accord Overton v. Sanofi–Aventis U.S., LLC, No. 13-cv-5535,

2014 WL 5410653, at *5–6 (D.N.J. Oct. 23, 2014) (dismissing out-of-state plaintiffs' NJWPL

claims against their New Jersey-based employer, agreeing with various state and federal courts which have held that "the NJWPL *does not* apply to employees based outside of New Jersey.") (emphasis in original); cf. Portillo v. Nat'l Freight, Inc., 323 F. Supp. 3d 646, 663 (D.N.J. 2018) (holding, after a choice of law analysis, that foreign state plaintiffs could pursue NJWPL claims, reasoning that New Jersey had the most significant relationship to the parties and claims because, among other factors, the plaintiffs "did perform a significant portion of their work in New Jersey" and "[t]his is not the case where Plaintiffs seek the protection of New Jersey state wage and employment laws for people who avowedly never worked in New Jersey.").

While the New Jersey Supreme Court has not published a decision definitively resolving whether the NJWPL affords relief to out-of-state employees of New Jersey-based companies, the decisions of lower courts have suggested that it does not. For example, in an opinion holding that the NJWPL authorizes a private right of action, the Appellate Division of the New Jersey Superior Court questioned whether the out-of-state plaintiff could assert the claim, even though his employer was a corporation headquartered in New Jersey. Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 138 and n.2 (App. Div. 2003). The Winslow court refrained from deciding the issue because it had not been briefed by the parties. However, the Appellate Division expressed its doubt in dicta, given that the record showed the plaintiff maintained an office in Delaware. Id. at n.2. The court also observed that the state in which the plaintiff performed his services as a sales representative for the defendant may be relevant to the question of the whether the NJWPL applied. Id. Similarly, the Law Division has expressed that the focus of the NJWPL is the location of the employee, not the employer, and accordingly held that the NJWPL applies to protect an employee working in New Jersey for New York corporation. See Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 393 (Law Div. 1999).

According to the above-cited decisional law, Ortiz fails to state a claim for relief under the NJWPL. The Complaint does not allege that Ortiz either lives or works in New Jersey. Rather, according to the Complaint and documents referenced therein, Ortiz has at all relevant times resided in Pennsylvania and performed his work for Goya in Pennsylvania, notwithstanding his allegations that sales representatives were required to "attend periodic meetings" in New Jersey. (Compl., ¶ 37.) Although Ortiz alleges that he has been a sales representative for Goya "at" its Jersey City headquarters, the Broker Agreement between Ortiz and A.N.E., incorporated by reference into the Complaint, makes clear that Ortiz covers a sales territory for Goya only in Pennsylvania, with the exception of two Maryland-based customers included in Ortiz's sales route prior to 2014. These facts are conceded by Plaintiff.

Plaintiff, however, maintains that relief is nevertheless available to him under the New Jersey statute by operation of the Broker Agreement's "broad New Jersey choice of law provision." (Pl. Br. at 7.) In pertinent part, the Broker Agreement between Grateful Souls, LLC and A.N.E., dated August 29, 2014, provides as follows:

> Choice of Law and Jurisdiction: This Agreement shall be governed by and construed in accordance with the laws of New Jersey both as to interpretation and performance, without regard to such state's conflict-of-law rules, and any dispute arising under this Agreement or relating to the relationship created by this Agreement shall be subject to the exclusive jurisdiction of the federal or state courts of the state of New Jersey.

(Decl. of Amauris Martinez, Ex. B at ¶ 27). Plaintiff maintains this dispute falls within the scope of the choice of law provision and thus, the Court should enforce the provision and find that Ortiz may pursue relief under New Jersey's statutory cause of action for wage law violations.

New Jersey law indeed holds that ordinarily, contractual choice of law provisions are to be upheld, so long as they do not violate public policy. Instructional Systems, Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992). It is not at all clear, however, that this dispute falls

within the Broker Agreement's choice of law provision. Although Plaintiff characterizes the provision as "broad," the above-quoted provision contains two parts: a choice of law clause and a forum selection clause. The forum selection clause applies to "any dispute . . . relating the relationship created by [the Broker] Agreement," but the choice of law clause is noticeably more narrowly drawn, limiting application of New Jersey law to the interpretation and performance of the "Agreement" itself. It is debatable whether this action can be considered to fall within these parameters of the choice of law clause, given that the dispute concerns whether Defendants have unlawfully misclassified Ortiz (and other sales representatives) as independent contractors when Defendants were in fact treating them as employees.

In any event, the Court need not decide whether this dispute is covered by the choice of law provision. Even assuming it is, the Court nevertheless concludes that Ortiz fails to state a plausible NJWPL cause of action. The available caselaw strongly militates against applying the NJWPL statute to encompass the claims of individuals who work outside of New Jersey, regardless of the breadth of a contractual choice of law provision. See Lupian, 240 F. Supp. 3d at 313-14.

This precise issue was addressed by the District Court of New Jersey in Lupian. Substantially similar to the facts presented in this action, Lupian involved non-New Jersey residents working in their state of residence (in that case, Illinois) as delivery drivers for a New Jersey-based motor carrier. Lupian, 240 F. Supp. 3d at 311. Significantly, the defendant employer engaged the plaintiff delivery drivers' services pursuant to contracts which provided that "all disputes between the parties shall be adjudicated in the State of New Jersey and under New Jersey law." Id. The plaintiff delivery drivers brought a putative class action suit alleging that the defendant had misclassified them as independent contractors instead of employees. Id. at

312. They sought relief under the NJWPL, asserting it applied pursuant to the contractual choice of law provision, but also pled a claim, in the alternative, under the analogous Illinois statute. Id. On the defendant's motion to dismiss, the district court applied choice-of-law principles to determine which state's statute should govern. Id. at 313. Noting New Jersey's well-settled public policy against regulating conduct outside the state versus Illinois's interest in protecting its workers, the Lupian court concluded that the situation presented—"Illinois workers [who] are claiming violations of wage laws in connection to conduct occurring within Illinois"—fell within an exception to the rule that contractual choice of law provisions are ordinarily upheld. Id. at 313-14. Accordingly, the district court declined to enforce the choice of law provision, held that New Jersey law did not govern the plaintiff workers' wage violation claims, and dismissed the NJWPL with prejudice. Id. at 314. On interlocutory appeal of an unrelated issue, the Third Circuit approvingly noted the district court's decision to reject extraterritorial application of the NJWPL. Lupian, 905 F.3d at 130 n.1 (stating that "[o]n appeal, the parties do not disagree that Illinois law should be applied [to the wage claims], nor do we.").

The Court agrees with the court's analysis in Lupian as well as the other available decisional law on the NJWPL's reach and accordingly finds that Ortiz, an admittedly out-of-state employee, has failed to state a plausible claim for relief under the NJWPL. Ortiz's reliance on the choice of law provision in the Broker Agreement, even assuming it applies, is unavailing. New Jersey will not uphold a contractual choice of law if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties." Instructional Systems, 130 N.J. at 342 (applying Restatement (Second) of Conflicts of Laws § 187(b)

8

(1969)).[3] The caselaw discussed above indicates that New Jersey has little to no interest in

providing employment protections, including the NJWPL, to individuals outside of New Jersey.

In fact, New Jersey has a well-established public policy against governing out-of-state conduct.

D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516 (1993); see also Reddick v. E Mortgage

Mgmt, LLC, No. 11-1260, 2013 WL 1087910, at *11 (D. Del. Mar. 15, 2013) (observing, in an

opinion considering whether the NJWHL has extraterritorial force, that "courts have limited the

application of other New Jersey state employment laws to employees working within New

Jersey's borders."). In contrast, Plaintiff's home state of Pennsylvania has a marked interest in

ensuring that persons who live and work in that state have wage protections, as its comparable

statute, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq.,

demonstrates. The Pennsylvania statute defines "employer" using language almost identical to

the NJWPL: it provides that the obligations of the Pennsylvania statute shall apply to "every"

individual, firm, partnership and other entity "employing any person in this Commonwealth." 43

P.S. § 260.2a. In addition to the relative state interests militating against Plaintiff's effort to use a

choice of law provision to enforce rights under the NJWPL, the Court notes that Plaintiff cites no

controlling authority in support of his position.

Plaintiff will, however, be given leave to amend his complaint to assert a claim under the

Pennsylvania Wage Payment and Collection Law on behalf of a putative "Pennsylvania Class,"

as he seeks to do in his separately-filed motion to amend pursuant to Federal Rule of Civil

Procedure 15(a). Rule 15 provides that a court should liberally grant leave to amend pleadings

when justice so requires. Given that Ortiz performs his sales work for Defendants in

---

[3] "A federal court sitting in diversity applies the choice-of-law rules of the forum state . . . to determine the controlling law." Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir.2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941)).

Pennsylvania, it would appear that Defendants are subject to the Pennsylvania statute, assuming that it is an "employer" as Plaintiff alleges. When a litigant's request to amend is "a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). For this same reason, Plaintiff may also name two additional Pennsylvania-based Goya sales representatives, Saul Hernandez and Pedro Urena, as Plaintiffs in this action, as requested in the motion to for leave to file an Amended Complaint.[4]

### C. Unjust Enrichment

Plaintiff claims that Defendants have been unjustly enriched by reaping the benefits of his services while shifting costs, such as various operating expenses and workers' compensation insurance, that Defendants should have borne had they treated him as an employee. Plaintiff alleges, essentially, that he did not receive the appropriate compensation for his work as a salesperson for Goya products as a result because Defendants unlawfully misclassified him as an independent contractor. Defendants argue that Plaintiff is precluded from recovering under a theory of unjust enrichment by the existence of a contract—the Broker Agreement—which governs his rights as against Defendants. Plaintiff responds that the Broker Agreement is void for being in violation the state wage statute and contrary to public policy.

---

[4] Defendants, the Court notes, do not raise any opposition to a Pennsylvania plaintiff asserting a wage claim under Pennsylvania law and, indeed, indicate that had the proposed amendment been so limited (that is, had not sought to re-plead the NJWPL claim and the common law claims on behalf of a nationwide class), they would likely not have filed any opposition to the motion to for leave to amend.

The Court finds that Plaintiff fails to state a plausible claim for unjust enrichment under New Jersey law.[5] To establish unjust enrichment, a plaintiff "must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (N.J. 1994). The equitable remedy of unjust enrichment, often referred to as quasi-contract, is imposed when there "is not a contract at all, since there is no actual manifestation of assent." Wanaque Borough Sewerage Auth. v. Twp. of W. Milford, 144 N.J. 564, 574 (N.J. 1996). Quasi-contractual obligations are "imposed by the law for the purpose of bringing about justice without reference to the intention of the parties." Id. While the Complaint may be understood to plead for relief for a wrongful retention of a benefit by Defendant, Defendants correctly point out that a claim for unjust enrichment cannot survive when there is an adequate remedy at law. See Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982); see also Duffy v. Charles Schwab & Co., Inc., 123 F.Supp.2d 802, 814 (D.N.J. 2000) ("Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law."). If the Broker Agreement between Goya and its sale representatives is valid, then it would govern the parties' mutual rights and obligations regarding certain terms of employment, compensation, and similar matters. If, on the other hand, the Broker Agreement is void, as Plaintiff argues, then it would be invalid by operation of the state wage protection laws,

---

[5] Under the Erie doctrine, federal courts sitting in diversity apply the substantive law of the state in which the court sits. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Both Plaintiff and Defendants have relied on New Jersey law in arguing whether the common law claims are viable, and neither raises a conflict in the laws of the forum state and any other jurisdiction, in particular Pennsylvania. The Court accordingly applies New Jersey substantive law to determine whether Plaintiff has pled plausible claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing.

in this case, the Pennsylvania Wage Payment and Collection Law. Assuming the truth of the allegations in the Complaint, it is the statute, and not the contract, which would define the relief to which Plaintiff is entitled. Under either scenario, Plaintiff has an adequate remedy at law for Defendants' alleged wrongdoing.

Therefore, based on the facts pled by the Complaint, Plaintiff's claim for unjust enrichment must be dismissed. Moreover, because Plaintiff has not demonstrated that he could allege facts establishing a viable claim, the Court cannot grant leave to file the proposed Amended Complaint insofar as it reasserts the unjust enrichment claim. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).

### D. Implied Covenant of Good Faith and Fair Dealing

This claim will be dismissed for failure to plead facts, which, taken as true, would demonstrate that Defendants are liable for breaching the covenant of good faith and fair dealing. New Jersey law holds that every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract's terms. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001). The covenant constitutes a commitment that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 421 (1997); see also Brunswick Hills Racquet Club Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005) (holding that a party may be liable for breach of the covenant of good faith and fair dealing based on engaging in conduct that frustrates the other party's receipt of the bargained-for benefit). The Complaint is devoid of factual allegations that Defendants engaged

in conduct which deprived Plaintiff of the fruits of their contract. Plaintiff does not indicate that facts alleged in the proposed Amended Complaint would cure this defect, and thus leave to re-plead the claim for breach of the covenant of good faith and fair dealing will not be granted.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings will be granted. The motion for leave to file an amended complaint will be granted insofar as it seeks to add two named plaintiffs and to plead a claim for relief under the Pennsylvania Wage Payment and Collection Law but denied in all other respects. An appropriate Order will be filed.

___s/ Stanley R. Chesler_____
STANLEY R. CHESLER, U.S.D.J.

Dated: April 3, 2020