NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE ORTIZ and SAUL HERNANDEZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> GOYA FOODS, INC., and A.N.E. SERVICES, INC., <br><br> Defendants. | Case No. 2:19-cv-19003-SRC-CLW <br><br> **OPINION** |

**CHESLER**, District Judge

This matter comes before the Court on the motion for class certification brought by Plaintiffs Jose Ortiz and Saul Hernandez ("Plaintiffs") against Defendants Goya Foods, Inc. ("Goya") and A.N.E. Services, Inc. ("A.N.E." and, collectively with Goya, "Defendants"). Defendants oppose the motion. The Court has considered the Parties' written submissions and, for the reasons that follow, will deny Plaintiffs' motion.

I. **BACKGROUND**

Goya is an international company that distributes, and sells a variety of food products all around the world. Goya utilizes a workforce of sales representatives ("Brokers"), to distribute Goya products to supermarkets, grocery stores and restaurants. Goya engages the Brokers to perform their work pursuant to a "Broker Agreement" between a Broker and A.N.E., Goya's distribution arm. (*See* Broker Agreement (ECF No. 109 Ex. 1); Milstrey Dep. at 25:04–12, 27:11–20 (ECF No. 109 Ex. 5); Lopez Dep. at 18:16–23 (ECF No. 109 Ex. 8).) As described within the

Broker Agreement, all Brokers are deemed to non-employee "independent contractors." (*See* Broker Agreement.) According to Plaintiffs, Defendants unlawfully misclassify their Brokers in Pennsylvania as independent contractors and have taken unlawful deductions from the Brokers' pay in violation of the Pennsylvania Wage Payment and Collection Law. (Am. Compl. ¶¶ 2, 81–89 (ECF No. 43).)

During the pendency of this litigation, Defendants introduced an amendment to the Broker Agreement which the Brokers had the opportunity to, but were not required to, enter into with Defendants ("the Arbitration Amendment"). (Milstrey Decl., Exs. 1–2.) Among other things, Brokers who entered into the Arbitration Amendment received a $2,000 payment in return for waiving their right to participate in the instant litigation. (Milstrey Decl., Exs. 1–2.) Attendant with the Arbitration Amendment the Brokers received a notice which explicitly informed the PA brokers of this lawsuit, the claims asserted and damages sought, and that they were potential putative class members. (Milstrey Decl. (ECF No. 119 Ex. 2), Exs. 1–2.)[1] 16 of the 31 Brokers eligible to enter into the Arbitration Amendment did so. (Milstrey Decl., Exs. 1–2.) Six putative class members ended their relationship with Defendants prior to the time Defendants rolled out the Amendment. (Milstrey Decl. ¶¶ 7–11.)

On May 12, 2022, Plaintiffs filed the instant Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23, seeking to certify a putative class of: "All persons who worked, on a full time basis, for Defendants in the Commonwealth of Pennsylvania from

---

[1] *See* Milstrey Decl., Exs. 1–2 ("[I]f you sign the Amendment, you would have to pursue any claims you may have against ANE and/or Goya in arbitration on an individual basis only. You would not be able to participate in the Ortiz class action lawsuit or recover any money if that case is successful, which ANE/Goya disputes"); *id.* ("If you decide to sign the Amendment, you will receive a $2,000 payment and you will be excluding yourself from the pending class action. However, you could still bring these claims in arbitration if you wanted to. You are not required to sign the Amendment...")

October 15, 2016 to the time of trial as sales representatives and signed a Broker Agreement, directly or on behalf of a business entity." (ECF No. 109.)

## II. DISCUSSION

Under Rule 23(a), before proceeding as a class Plaintiffs must "demonstrate, first, that '(1) the class is so numerous that joinder of all members is impracticable; '(2) there are questions of law or fact common to the class; '(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and '(4) the representative parties will fairly and adequately protect the interests of the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. P. 23(a)). Defendants contend that Plaintiffs are unable to meet any of these four requirements. Because Plaintiffs have failed to demonstrate that they can establish the numerosity element of Rule 23(a), the Court declines to consider Defendants remaining arguments.

The numerosity requirement of Rule 23(a) "prevents putative class representatives and their counsel, when joinder can be easily accomplished, from unnecessarily depriving members of a small class of their right to a day in court to adjudicate their own claims." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594–95 (3d Cir. 2012). "[T]he number of class members is the starting point of [the] numerosity analysis." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016). Rule 23(a)(1) is "conspicuously devoid of any numerical minimum required for class certification," *id.* at 249, but joinder is presumed to be impracticable when the potential number of class members exceeds forty. *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022). However, this is "a guidepost: showing the number of class members exceeds forty is neither necessary nor always sufficient." *In re Modafinil Antitrust Litig.*, 837 F.3d at 250. Where a putative class consists of fewer than forty members, "the inquiry into impracticability should be

3

particularly rigorous." *Id.* at 249. Plaintiffs must show the class is numerous enough by a preponderance of the evidence. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 483–84 (3d Cir. 2018). As the Third Circuit has repeatedly emphasized, the numerosity requirement is meant to have "real teeth." *Allen*, 37 F.4th at 896 (citing *id.* at 484).

Here, Defendants submit evidence sufficient to determine with precision the number of putative class members: At its maximum possible size, Plaintiffs proposed class would amount to 37 members, including the two Plaintiffs. (Milstrey Decl. ¶¶ 7–11.)[2] However, Plaintiffs have failed to establish that nearly half of these individuals are eligible to participate in this lawsuit and, even if they had, joinder of the 37 brokers would not be impracticable in light of the facts here.

### A. Any Putative Class Excludes Individuals Who Executed the Arbitration Amendment[3]

The Parties disagree whether the Court may include in its consideration of the putative class size the brokers who signed the Arbitration Amendment. Plaintiffs urge the Court to reserve until after class certification the question of whether the arbitration agreements signed by the potential class members are valid and enforceable, and contend that "courts have consistently held that the question of whether an absent class member has an enforceable arbitration agreement is a merits question that cannot be resolved at the class certification stage." (Pltfs.' Br. at 3 n.1; *see also* Pltfs.' Reply at 6 ("Courts have repeatedly held that at the class certification stage, it is

---

[2] Plaintiffs initially brought their motion without the benefit of evidence which established with precision the putative class size, and instead relied on (now demonstrably accurate) estimates in support of their numerosity arguments. Defendants, in support of their opposition to Plaintiffs' motion, have supplied such evidence, and thus the Court need not rely on Plaintiffs' initial estimates.

[3] Defendants also contend that Plaintiffs' proposed class should be limited to individuals who worked "in [Pennsylvania] 'on a full-time basis.'" (Dfts.' Br. at 17 (emphasis added)). This approach would exclude from the putative class five brokers who serviced accounts in Pennsylvania and at least one other state. (Milstrey Decl. ¶¶ 7, 9.) Defendants' interpretation is unnecessarily limiting. The proposed class definition applies the modifier "on a full time basis" to the nature of an individual's work for Defendants—the modifier is not a limitation on the time an individual spends on work in the state of Pennsylvania.

4

improper to determine the enforceability of an arbitration agreement or a release because this presents a merits issue that should be dealt with once a class is certified.").)

Despite the unequivocal nature of Plaintiffs' assertion, the authorities on which Plaintiffs rely stand for no such proposition: Rather, they *allow* the Court to punt the question of an arbitration agreement's enforceability until after the class certification stage. *See, e.g.*, *Slamon v. Carrizo (Marcellus) LLC*, 2020 WL 2525961, at *22 (M.D. Pa. May 18, 2020) ("Courts have held that issues related to arbitration agreements *do not have to be resolved* at the class certification stage, but can be resolved through the creation of subclasses or the elimination of some members of the class at a later stage.") (emphasis added). In fact, the Third Circuit's ruling in *Allen* flatly contradicts Plaintiffs' position. In determining whether a putative class meets the numerosity requirement under Rule 23, "the court cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits . . . ." *Allen*, 37 F.4th at 900 (citing *Marcus*, 687 F.3d at 591).[4] In any event, the case on which Plaintiffs rely for their position are cases in which the arbitrability—or lack thereof—did not factor into the calculation of numerosity: In each of these cases, the putative class was sufficiently numerous even if the court discounted those individuals with the arbitration clauses. *Slamon*, 2020 WL 2525961, at *22 (potential subclasses each consisted of at least 139 putative members); *see also Finnan v. L.F. Rothschild & Co.,* 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certified class included at least 127

---

[4] The Court also notes that certain of the authorities on which Plaintiffs rely for the proposition that the enforceability of arbitration agreements should be determined after class certification concern collective action pursued under the Fair Labor Standards Act ("FLSA"). *See, e.g.*, *Weisgarber v. N. Am. Dental Grp.*, LLC, 2020 WL 1322843, at *6 (N.D. Ohio Mar. 20, 2020) (analyzing whether condition certification of collective action was appropriate); *Whittington v. Taco Bell of America, Inc.*, 2011 WL 1772401, *5 (D. Colo. May 10, 2011) (considering the question in conjunction with a pre-certification motion to compel arbitration). The collective action mechanism provided for by FLSA is substantially different from Rule 23(a) in several important respects. Most relevantly here, it does not include a numerosity requirement similar to that found in Rule 23. *Compare* 29 U.S.C. § 216 *with* Fed. R. Civ. P. 23.

members); *Rehberg v. Flowers Baking Co. of Jamestown*, LLC, 2015 WL 1346125 at *10 (W.D. N.C. Mar. 24, 2015) (certified class included at least 100 members). Such is not the case here, given that any potential subclass consisting of Brokers who agreed to arbitrate their claims would inevitably be too small to survive Rule 23's numerosity requirement. *Fanty v. Com. of Pa., Dep't of Pub. Welfare*, 551 F.2d 2, 7 (3d Cir. 1977) ("[E]ach subclass must independently meet the requirements of Rule 23 for maintenance of a class action . . ."); *see infra* Section II.B.

Ultimately, it is Plaintiffs' burden to establish the existence of a class by a preponderance of the evidence, a burden which they have failed to meet. *Steak 'n Shake*, 897 F.3d at 483–84. The Federal Arbitration Act ("FAA") governs written contracts concerning commercial transactions that contain an arbitration clause. 9 U.S.C. § 2; *see also Dluhos v. Strasberg,* 321 F.3d 365, 369 (3d Cir. 2003) ( "The [FAA] explicitly permits the use of arbitration and specifically authorizes individuals in commercial transactions to contract for arbitration."). Section 2 of the FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985); *see also Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996) ("Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.").

Plaintiffs have proffered no evidence—let alone a preponderance of the evidence—that would provide a reasonable basis by which the Court can conclude that the Arbitration Amendment is unenforceable. *See Forby v. One Techs., LP*, 2020 WL 4201604, at *9 (N.D. Tex. July 22, 2020) ("Without more, the court determines that class discovery will not change that putative class

members' claims are likely barred by their agreement to arbitrate their claims pursuant to the Terms and Conditions."). Accordingly, the putative class consists of, at most, 21 brokers.[5]

### B. Joinder is Not Impracticable

Plaintiffs argue that the numerosity requirement is satisfied notwithstanding that the Court excludes the Brokers who signed the Arbitration Amendment, as a class size of 21 individuals is sufficient here to survive. The Court disagrees. Even assuming, *arguendo*, that the Court considered the 16 brokers who signed the Arbitration Amendment to be putative class members—resulting in the maximum class size of 37 individuals—joinder is not impracticable here.

Courts in the Third Circuit consider various factors when analyzing whether joinder is impracticable, including: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *In re Modafinil*, 837 F.3d at 253. "While all factors are relevant . . . both judicial economy and the ability to litigate as joined parties are of primary importance." *Id.* Here, in light of the limited number of putative class members, the relevant factors weigh heavily in finding that joinder is practicable:

**Judicial Economy.** When analyzing whether judicial economy is served by Rule 23 certification, the "focus [is] on whether the class action mechanism is substantially more efficient

---

[5] The Court does not accept Defendants' argument that "Plaintiffs are estopped from" arguing that the putative class must include the brokers who signed the Amendment because "Plaintiffs' counsel lodged no objection to—and even approved the language of—the Notice, which explicitly advised the PA brokers, in multiple different places, that signing the Amendment would render them unable to participate in this action." (Dfts.' Br. at 18.) The Court will not, on this record, equate Plaintiffs' withdrawal of a motion objecting to initial drafts of Defendants' proposed communication with a tacit agreement to exclude Brokers who signed the Arbitration Amendment from any future class. However, this record strongly supports Defendants' contention that their communications with potential class members concerning the Arbitration Amendment did not involve any overreaching or inequitable conduct by Defendants.

than joinder of all parties." *Id*. at 254.  Each of the putative class members are known (or can be identified with minimal investigative work) based on the evidence Defendants submitted with their opposition (Milstrey Decl. at Exs. 3, 5–6), and each have already consented "to the exclusive jurisdiction of the federal or state courts of the state of New Jersey" (*see* Broker Agreement ¶ 27; Milstrey Decl. ¶ 12).  And, as Plaintiffs themselves argue, the key issues revolve around the legal effect of the form Broker Agreement and its application to the various Brokers:  The risk of overlapping discovery requests or duplicative motions is relatively limited.  *Cf. Ortez v. Michael P. Morton, P.A.*, 2019 WL 1417156, at *5 (D. Del. Mar. 29, 2019) ("[T]he nature of the dispute in this case is about as cabined as it gets . . . it is hard to believe that the scope of discovery and motions practice will be significant.").

**Ability and Motivation to Litigate.**  According to Plaintiffs, in light of the ongoing relationship between the brokers and Defendants, joinder is impracticable because potential claimants face the specter of an "increased probability of retaliation."  (Pltfs.' Br. at 30–31.)  Despite repeated concerns about the reluctance of putative plaintiffs to join the proceeding for "fear of reprisal," Plaintiffs present no evidence suggesting that such a fear exists, let alone that Defendants pursued unduly coercive action designed to render joinder impracticable.  *Compare with Rood v. R & R Express, Inc.*, 2022 WL 1082481, at *4 (finding joinder impracticable in part due to the "affirmative steps to discourage its past and current employees from participating in the class," which include making "threats to draw out the proceedings for any claimant who tried to join the action by subpoenaing their phone records, reviewing every email they ever sent, and so on," "draft[ing] and distribut[ing] affidavits to the putative class members containing averments that directly contradicted the class claims," and "encourag[ing] the class members who received these affidavits to sign them under coercive circumstances."); *Rannis v. Recchia*, 380 F. App'x

646, 651–52 (9th Cir. 2010) (finding district court did not abuse its discretion in finding joinder impracticable where putative class size diminished at least in part when defendant and his agents "aggressive urged" certain putative class members to opt out of the suit). Indeed, given that nearly half of the putative class members who had the opportunity to sign the Arbitration Amendment decided not to do so, yet remained brokers for Defendants, the logical inference is that the group of Brokers, generally, were *not* intimidated into accepting a voluntary modification to their Broker Agreement. *Compare* Milstrey Decl. ¶¶ 7–11 *with Cypress v. Newport News General and Nonsectarian Hospital Assoc.*, 375 F.2d 648, 653 (4th Cir. 1967) (certifying class of 18 people where class faced fear of reprisal backed by evidence in the record); *Slanina v. William Penn Parking Corp.*, 106 F.RD. 419, 423 (W.D. Pa. 1984) (certifying class of at least 25 where plaintiffs "indicated fears of reprisal and retaliation" from defendants). Plaintiffs' authorities to the contrary—distinguishable on the facts, largely dated, and wholly nonbinding[6]—are unpersuasive when considered against the Third Circuit's clear command to give the numerosity requirement "real teeth." *Allen*, 37 F.4th at 889. Bare speculation that the Broker's feared retaliation from Defendants is insufficient at this phase, particularly in light of the discovery that the Parties have

---

[6] *See, e.g., Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 624 (5th Cir. 1999) (finding district court did not abuse discretion in certifying class of 100 to 150 members where some unidentified number of "putative class members were still employed by the Casino [and] might be reluctant to file individually for fear of workplace retaliation."); *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978) (finding that district court did not abuse its discretion in denying class certification where Plaintiff failed to set forth allegations or pleadings regarding the putative class size); *Knight v. Mill-Tel, Inc.*, 2013 WL 3895341 (D. Kan. July 29, 2013) (finding numerosity satisfied when it was not in dispute and the putative class members numbered over 500 individuals); *Bert v. AK Steel Corp.*, 2006 WL 1071872, *5 (S.D. Ohio April 24, 2006) (certifying class of at least 30 individuals where, among other things, putative class members could not be located); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968) (certifying class on the ground, prior to the Third Circuit's that "[w]hile 25 is a small number compared to the size of the other classes being considered, it is a large number when compared to a single unit"); *Moore v. Napolitano*, 926 F. Supp. 2d 8, 28 (D.D.C. 2013) (certifying class of 27 members where joinder was impracticable because the individuals were dispersed across the country); *see also Moore v. Napolitano*, 269 F.R.D. 21, 28 (D.D.C. 2010).

9

conducted to date. *Id*. at 902 ("[P]laintiffs must do more than assert a plausible causal explanation at this stage.")

**Financial Resources.** In favor of finding joinder reasonably available here, the putative class members are relatively well-compensated business owners—they earned over $100,000 per year on average from 2018 through 2021, during the proposed class period (Milstrey Decl. ¶ 15)—seeking potentially substantial monetary damages. *Cf. Muse v. Holloway Credit Sols., LLC*, 337 F.R.D. 80, 87 (E.D. Pa. 2020) (factor weighed against joinder where the potential members of the class consisted of consumer debtors who received a collection letter from defendant).

**Geographic Dispersion.** The geographic distribution of the class is not so onerous as to find joinder impracticable here, where potential class members are located across Pennsylvania and Delaware. *See* Milstrey Decl. at Exs. 3, 5–6; *Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*, 136 F.R.D. 372, 378 (D. Del. 1991) (joinder of 28 putative class members was not impracticable because all were located in Delaware, New Jersey, or Pennsylvania); *Martignetti v. Bachman*, 2011 WL 13257439, at *3–5 (C.D. Cal. Nov. 28, 2011) (finding that "geographical diversity is not an overwhelming barrier to joinder as the majority of the [19 to 41] potential class members resided in California [and] all but one of the potential out-of-state class members live in nearby Nevada"). While the Brokers' geography may pose certain logistical challenges, "these challenges are less likely to rise to the level of impracticability due to the current advances in remote hearings and conferences." *Cf. Muse*, 337 F.R.D. 80 at 87 (joinder of 32 putative class members not impractical when they were located across Pennsylvania).

**Claims for Injunctive Relief or Damages.** It is undisputed that Plaintiff seeks only damages and does not seek injunctive relief. This factor thus "favors joinder over class treatment." *Wright v. Ristorante La Buca Inc.*, 2018 WL 5344905, at *10 (E.D. Pa. Oct. 26,

10

2018*)*; *see also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2017 WL 3705715, at *7 (E.D. Pa. Aug. 28, 2017) (noting that "[t]his factor weighs in favor of class certification where the claims are for injunctive relief rather than damages" and "weighs against certification" if plaintiffs are not seeking injunctive relief).

### III.   CONCLUSION

For the reasons discussed in this Opinion, Plaintiffs have not met their burden to show that the evidence weighs in favor of class certification, and the Court will deny Plaintiffs' motion.

/s/ Stanley R. Chesler
HON. STANLEY R. CHESLER
United States District Judge

Dated: August 2, 2022